Miranda De Hostos, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
En el presente caso, el jurado encontró culpables a los apelantes y el tribunal de instancia a solicitud de ellos, decretó su absolución perentoria. El Pueblo recurrió en certiorari al Tribunal Supremo para que revisara las absoluciones perentorias y dicho alto foro en Pueblo v. Colón Burgos y Castillo Rodríguez opinión del 12 de abril de 1996, 96 J.T.S. 52, pág. 963, revocó la resolución de absolución perentoria y reinstaló los veredictos de culpabilidad. Finalmente, los apelantes fueron sentenciados por el tribunal de instancia.
Inconformes los apelantes presentaron recurso de apelación alegando la comisión de varios errores que se resumen en los siguientes. Primero, al emitir un veredicto de culpabilidad sin probarse los delitos, más allá de duda razonable y al no desestimar las acusaciones por conspiración y *828 encubrimiento. Segundo, en cuanto a la admisibilidad que hiciera el tribunal de instancia de cierta prueba contra los apelantes y que no se concedió la solicitud de juicios por separados. Tercero, que erró el tribunal de instancia al no permitir descubrimiento de prueba a la defensa. Cuarto, que. erró el . jurado al emitir veredictos inconsistentes.
Atendido el recurso y la oposición, se confirman las sentencias apeladas por los siguientes fundamentos.
I
La versión de los hechos según determinada por el propio Tribunal Supremo en Pueblo v. Colón Burgos y Castillo Rodríguez, supra, se resume a continuación.
Durante la madrugada del 15 de febrero de 1991, el Sr. Manuel Maldonado Irizarry y otros sujetos forzaron el techo del Colmado San Miguel Cash & Carry, localizado en Río Piedras, lo cual activó la alarma del negocio. Esta sonó en la casa del dueño del local, el Sr. Miguel Cruz Esquilín y en el Cuartel de la Policía de Río Piedras.
Al escuchar la alarma, el señor Cruz Esquilín se dirigió al colmado y al llegar, vio un carro patrulla, pero no vio pasajeros en el mismo. Mientras abría los portones del negocio, sintió que alguien se le acercaba por la espalda y le preguntó si era el dueño. El señor Cruz Esquilín se dio vuelta y vio que se trataba del policía, Colón Burgos, quien se veía nervioso y le indicó que abriera el negocio.
Al entrar, el señor Cruz Esquilín notó que el techo falso del negocio estaba roto y el plástico del que estaba hecho, estaba regado en el piso. Bajo los escombros del techo y al lado de un carro de mover mercancía se encontraba tendido el cuerpo del señor Maldonado Irizarry, el cual aún tenía vida, pero estaba sangrando de. una herida en el pecho.
Acompañado del co-apelante Colón Burgos y otro policía, Eric Rivera Rivera, el señor Cruz Esquilín se apartó del herido para verificar si en el resto del negocio habían más extraños. A su regreso, se encontraron con el sargento Elíseo Vázquez Díaz. Este les dijo, que tenía que llamar al capitán, el co-apelante Reinaldo Castillo Rodríguez, lo cual hizo desde la oficina del dueño del colmado.
Posteriormente, llegaron más carros patrullas y los paramédicos, pero el herido ya había muerto. Cuando el capitán Castillo Rodríguez llegó al lugar se dirigió al pasillo donde se encontraba el cadáver. El señor Cruz Esquilín no se había percatado de la llegada del capitán Castillo Rodríguez hasta que éste dijo a los presentes "aquí está lo que éste tenía para defenderse". Se refería a una pistola marca Beretta, Modelo M-84, que supuestamente el capitán había encontrado debajo del carro de mercancía que estaba al lado del cadáver.
El dueño del colmado reconoció al capitán Castillo Rodríguez como policía porque dos semanas antes se lo habían presentado en el mismo negocio. El capitán Castillo Rodríguez estaba vestido de civil y permaneció en el lugar de los hechos, pero no intervino más en la investigación del caso.
Se pudo determinar la procedencia del arma que se había encontrado en la escena de los hechos, a base de los testimonios del Sr. Francisco Cervoni Dominici, quien era su dueño; el Sr. Jesús M. Aristud Rivera, quien para la fecha de los hechos era policía adscrito al Cuartel de la Policía del Aeropuerto Luis Muñoz Marín y Edwin Rivera Fernández, quien era el encargado de depósito de armas de la policía desde 1990.
Surge de la prueba que en octubre de 1988 el señor Cervoni Dominici había consultado con el agente Aristud Rivera sobre el procedimiento para entregar dos armas de las que quería desprenderse. El agente Aristud Rivera recibió dos armas con sus respectivas balas, incluyendo una Beretta y le entregó un recibo al señor Cervoni Dominici.
Transcurrido un mes, el señor Cervoni Dominici recurrió al agente Aristud Rivera nuevamente para verificar de qué manera podía recuperar sus armas. Este se comunicó con la secretaria ejecutiva *829 la señora Ana Boada quien le indicó que las armas se habían enviado al Cuartel General. El agente Aristud Rivera vio las armas por última vez, el 31 de octubre de 1988.
Por su parte, el agente Edwin Rivera Fernández declaró que no recibió las armas entregadas por el señor Cervoni Dominici. Se recibió como exhibit el acta negativa del no recibo de la Beretta B04377Y. Tampoco se le devolvieron al señor Cervoni Dominici ni se recibieron en el depósito de armas de la Policía de Puerto Rico.
El 15 de febrero de 1991, día de los hechos de la controversia, el agente Martínez se presentó en la residencia del señor Cervoni Dominici preguntándole por el recibo que le había entregado al agente Aristud Rivera. El señor Cervoni Dominici volvió a ver la Beretta el 6 de marzo de 1991, cuando prestó declaración jurada ante la Fiscal Iris Meléndez.
Regresando a la escena de los hechos, a las 4:45 AM, luego de haber encontrado la pistola al lado del cadáver de Maldonado Irizarry, llegó al San Miguel Cash & Carry, el agente Ramón Vélez Velez, del Cuerpo de Investigaciones Criminales. Este testificó, que cuando llegó al lugar había un grupo de personas y que entrevistó primero al sargento Vázquez Díaz, quien tenía a su cargo la custodia de la escena de los hechos.
Según el testimonio del agente Vélez Vélez, el sargento Vázquez Díaz le contó en la entrevista que cuando llegó esa noche al colmado coincidió con los policías Rivera Rivera y Colón Burgos. Todos habían respondido a la alarma que se había activado en el Cuartel de Río Piedras. Se dividieron en dos grupos, el sargento Vázquez Díaz se fue a la parte trasera del negocio mientras que sus otros compañeros se fueron al frente.
Mientras estaba en la parte trasera, el sargento Vázquez Díaz escuchó una detonación y corrió hacia donde estaban los otros policías. El policía Colón Burgos le informó que le había tenido que disparar a través de la reja de la entrada, a una persona que vio dentro del local que le apuntaba con un arma de fuego y le indicó que el otro escalador había escapado.
El sargento Vázquez Díaz el dijo al agente Vélez Vélez, en la entrevista, que había sido él quien había encontrado el arma al lado de la mano izquierda del escalador al que había disparado. Que la removió y colocó encima de un mostrador porque el joven aún estaba con vida y temía que la utilizara.
El policía Colón Burgos fue la segunda persona que el agente Vélez Vélez entrevistó. Este le dijo que cuando llegó al negocio había escuchado ruidos provenientes de adentro del colmado. Se asomó por el portón de hierro y vio a dos individuos corriendo dentro del local. El sujeto que iba al frente, al verlo, sacó un arma y le apuntó, que al ver ésto, él se identificó, le dio el alto y le ordenó soltar el arma y como no respondió y continuaba apuntándole, le disparó.
Previo al momento en que el policía Colón Burgos disparó, el sujeto que alegadamente le apuntaba, chocó con otro sujeto que venía corriendo a sus espaldas. El individuo a quien el policía Colón Burgos le disparó perdió el balance y se cayó.
El otro policía Rivera Rivera, no pudo ofrecer más detalles en la entrevista, porque al momento en que oyó el disparo se encontraba en el carro patrulla pidiendo refuerzos.
A preguntas del Ministerio Público, el agente Vélez Vélez dijo que en la madrugada de los hechos, no dudó de la veracidad de la versión que le dieron los policías. Además, al examinar el torso del cadáver, notó un sólo orificio de bala, cerca de la tetilla izquierda. Estos datos parecían confirmar que el hombre se hallaba de frente al policía Colón Burgos, cuando éste le disparó.
Aún así, el agente Vélez Vélez recordó que habían algunos detalles que le parecían anormales. Primero, aunque la presencia del capitán Castillo Rodríguez en la escena, aún vestido de civil, no era de por sí extraordinaria, sí resultaba desconcertante el hecho de que siendo el policía de más alto rango y el comandante del cuartel de ese precinto, no parecía tener función o participación alguna en el caso. Segundo, la demora de los policías en llamar al Cuerpo de Investigaciones Criminales le *830 pareció inexplicable. Tercero, le llamó la atención la aparente inaccesibilidad para disparar desde el lugar donde el policía Colón Burgos dijo haberlo hecho.
El testimonio de la patóloga Lyvia Alvarez, quien analizó la trayectoria de la bala y examinó el cadáver, reveló que éste también tenía otro orificio de entrada de bala en la espalda. La patóloga Alvarez concluyó, que el disparo que hizo el policía Colón Burgos no fue de frente, directo al pecho, como éste alegaba, sino que probablemente el joven "estaba doblado hacia la izquierda en el pasillo (entre las góndolas), recibe el disparo (en la parte trasera de la cintura) y por eso sigue caminando y luego se da vuelta y cae boca arriba".
El propio Tribunal Supremo, en la relación de hechos que hizo de este caso, señaló que el descubrimiento del segundo orificio por la patóloga Alvarez y el rastreo de la pistola ocupada, convencieron a las autoridades de que los policías involucrados habían mentido para encubrir lo que parecía evidente, que el joven Manuel Maldonado Irizarry estaba desarmado y de espalda cuando el policía Colón Burgos le disparó.
Añade nuestro más alto foro que el encubrimiento, según los hechos probados ante el jurado, comenzó esa misma madrugada, con la llamada del sargento Vázquez Díaz al capitán Castillo Rodrigue^, quien tenía un arma "realenga" desde sus días en la comandancia del Aeropuerto y la utilizó para plantarla en la escena y encubrir el asesinato que había cometido el policía Colón Burgos.
Los apelantes fueron acusados, celebrándose el juicio contra el sargento Vázquez Díaz por tribunal de derecho y contra los otros dos por jurado. Luego de terminar el desfile de la prueba de cargo, la defensa solicitó la absolución perentoria, fundamentándose en que la prueba era insuficiente. El tribunal rechazó la solicitud.
El sargento Vázquez Díaz fue absuelto en todos los cargos por tribunal de derecho. El jurado que juzgó al policía Colón Burgos lo halló culpable de asesinato en segundo grado y lo absolvió del encubrimiento y la conspiración, mientras que al capitán Castillo Rodríguez lo hallaron culpable en todos los cargos.
Los apelantes reprodujeron la solicitud de absolución perentoria y el tribunal de instancia consideró "sorprendente" el veredicto del jurado y concluyó que la prueba era insuficiente para sostener la convicción, absolviéndolos perentoriamente.
El Pueblo recurrió al Tribunal Supremo el cual revocó la absolución perentoria y reinstaló los veredictos del jurado. Resolvió que el tribunal de instancia había errado al acoger favorablemente la solicitud de absolución perentoria de los apelantes, utilizando un criterio erróneo de suficiencia de prueba al adjudicar dicha solicitud.
El tribunal de instancia dictó las sentencia e inconformes los apelantes acuden ante nos para que revoquemos las mismas.
II
A la luz de los hechos antes esbozados, analicemos el derecho aplicable a la controversia planteada.
Los apelantes alegan como primer error, que el jurado emitió un veredicto de culpabilidad sin tener ante sí prueba más allá de duda razonable de todos los elementos de los delitos y sin rebatir la presunción de inocencia. Alegan además, que erró el tribunal de instancia al no desestimar, las acusaciones por conspiración y encubrimiento.
No tienen razón. Veamos.
-A-
E1 Código Penal en su Art. 82 define el asesinato como el acto de dar muerte a un ser humano con malicia premeditada. Los asesinatos que se realicen mediante veneno, acecho o tortura; toda clase de muerte alevosa, deliberada y premeditada; o cometida al perpetrarse o intentarse algún incendio de *831 morada, violación, sodomía, robo, escalamiento, secuestro, estragos, mutilación o fuga. Toda muerte perpetrada de manera distinta a las antes mencionadas, será constitutivo de asesinato en segundo grado. 33 L.P.R.A. sees. 4001-4002.
Toda persona que con conocimiento de la ejecución de un delito oculta al responsable del mismo o procura la desaparición, alteración u ocultación de evidencia, comete el delito de encubrimiento. Art. 236, Código Penal; 33 L.P.R.A. see. 4432.
El delito de conspiración se define entre otras circunstancias, como el acto en el que dos o más personas se ponen de acuerdo para cometer algún delito. Art. 262, Código Penal; 33 L.P.R.A. see. 4523.
Según los hechos de este caso, el apelante Colón Burgos le disparó por la espalda a la víctima bajo unas circunstancias que conforman el acto como un asesinato en segundo grado. Luego se realizó una conspiración encubrimiento, dirigida por el capitán Castillo Rodríguez, en plantar un arma con la que supuestamente la víctima apuntó al policía Colón Burgos y así quedaba justificada la supuesta necesidad de éste disparar para defenderse.
Del examen del expediente surge, que todos los elementos de los delitos fueron probados más allá de duda razonable, por lo cual el error no fue cometido.
-B-
En cuanto al planteamiento de que erró el tribunal de instancia al no desestimar las acusaciones por conspiración y encubrimiento contra el capitán Castillo Rodríguez bajo la Regla 64(i) y (p) de Procedimiento Criminal, supra, resolvemos que tampoco tiene razón.
Los apelantes alegan específicamente que la acusación no imputa delito porque en el texto de la misma no se indica en que consistía el acto ostensible, lo cual es indispensable para que se entienda imputado el delito de conspiración. Su planteamiento no es correcto.
En jurisdicciones como la nuestra, se exige que para que se entienda configurado el delito de conspiración debe ocurrir un acto manifiesto u ostensible "overt act" además del acuerdo. Pueblo v. Arreche Holdun, 114 D.P.R. 99, 110 (1983).
Por otro lado, el ordenamiento procesal penal establece que la acusación debe consistir de los hechos esenciales constitutivos del delito, redactado en lenguaje sencillo, claro, conciso y de forma tal que lo pueda entender cualquier persona de inteligencia común. Dicha exposición no tendrá que emplear las palabras exactas que usa la ley. Regla 35(c) de Procedimiento Criminal; 34 L.P.R.A. Ap. II. La acusación no tiene que ser absolutamente explícita, ya que lo que se requiere es que informe los hechos de manera general y la suficiencia de las mismas se interpreta de manera liberal. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. III, sec. 24.2, pág. 145.
Del texto de las acusaciones surgían los actos ostensibles, de alegar falsamente que la víctima le había apuntado con un arma al apelante Colón Burgos y alegar falsamente que la pistola había sido ocupada por el sargento Vázquez Díaz en el colmado donde ocurrieron los hechos.
El lenguaje utilizado en la acusación era suficiente en derecho para anunciar el delito y sus elementos, por lo cual no procedía su desestimación.
III
-A-
E1 segundo error tiene que ver con la admisibilidad de cierta prueba contra los apelantes y el no haber permitido la separación de los juicios.
La Regla 62 (E) de Evidencia, establece que es admisible como excepción a la regla de prueba de referencia, una declaración ofrecida contra una parte si la declaración es hecha por un co-conspirador. La regla indica, que para que sea admisible una declaración de ese tipo, la misma tiene que realizarse durante el curso de la conspiración y en la consecución del objetivo de ésta. 32 L.P.R.A. Ap. Iv.
*832 Para activar dicha excepción sólo se requiere una declaración hecha por una persona que actuaba de común acuerdo en la realización de un acto ilegal con la parte contra quien se ofrece la declaración. Pueblo v. Castro, 75 D.P.R. 672, 680 (1953); Pueblo v. Meliá León, opinión del 30 de junio de 1997, 97 J.T.S. 110, pág. 1346.
A los fines de establecer una conspiración como requisito previo a la admisión de las manifestaciones de un co-conspirador, no es preciso demostrar la existencia de una conspiración en los términos requeridos para probar el delito. Pueblo v. Lebrón López, 96 D.P.R. 274, 281-282 (1968); Pueblo v. Meliá León, supra, pág. 1346.
Por su parte, la Regla 91 y 92 de Procedimiento Criminal, supra, establecen una separación compulsoria de procedimientos judiciales contra coacusados cuando uno de éstos haya hecho declaraciones incriminatorias que afectan al acusado que solicita la separación. Sin embargo, ello no será aplicable si: (a) el fiscal se compromete a no ofrecer esas declaraciones incriminatorias como prueba ni hacer referencia a ellas durante el juicio; o (b) se imputa el delito de conspiración y las declaraciones incriminatorias del coacusado fueron hechas durante la vigencia de la conspiración. Pueblo v. Meliá León, supra, pág. 1345.
Finalmente, la Regla 4 (2) de Evidencia, supra, establece claramente que no se revocará ninguna decisión por motivo de admisión errónea de evidencia a menos que el tribunal que considera el efecto de la admisión errónea entienda, que eso fue el factor decisivo o sustancial en la sentencia cuya revocación se solicita.
En el caso de epígrafe, tanto la declaración del sargento Vázquez Díaz como lo que éste le dijo a la Fiscal Meléndez, fueron hechas por él durante el transcurso de una conspiración y para alcanzar los fines de la misma. Cuando el sargento Vázquez Díaz habló con la Fiscal, todavía la conspiración no había concluido. Prestar falsas declaraciones durante la investigación de fiscalía era esencial para el éxito de la conspiración para poder hacer creíble la versión de que la víctima le apuntó con un arma al apelante Colón Burgos y que por eso, éste le disparó en defensa propia.
Como las declaraciones incriminatorias fueron hechas durante el transcurso de la conspiración, los juicios no tenían que separarse conforme las Reglas de Procedimiento Criminal.
No erró el tribunal de instancia al admitir las declaraciones y denegar la solicitud para que los juicios se vieran por separado.
-B-
La Regla 20 de Evidencia, supra, establece en términos generales, que evidencia del carácter de una persona o de un rasgo de su carácter, no es admisible cuando se ofrece para probar que en una ocasión específica esa persona actuó de conformidad con tal carácter.
Una excepción a esta regla es, cuando el abogado de la defensa presenta prueba del carácter del acusado para probar conducta específica de conformidad con una ocasión anterior. Regla 20(A)(1), supra. Del acusado presentar prueba sobre el carácter, abre las puertas para que el Ministerio Público pueda refutar la misma. Pueblo v. Fradera Olmo, 122 D.P.R. 67, 76 (1988).
Cuando evidencia de carácter o de rasgo de carácter sea admisible, dicha evidencia puede presentarse mediante testimonio de reputación o en la forma de opinión. En esos casos, en el contrainterrogatorio se permitirá inquirir sobre conducta específica pertinente. Regla 20(C); supra.
Los apelantes plantean que no debió admitirse el récord de querellas del apelante, el capitán Castillo Rodríguez. No tienen razón.
El contenido de parte de ese récord surgió en una repregunta del contrainterrogatorio que se le formuló a la testigo de defensa, la señora María Carrasquillo. Esta testigo había declarado en el directo sobre el carácter del apelante capitán Castillo Rodríguez, lo cual abrió las puertas para que el Ministerio Público presentara prueba sobre tales extremos. Por lo que el tribunal de instancia no incidió al permitir dicha prueba.
*833 IV
El tercer error se resume, en que incidió el tribunal de instancia al no permitir descubrimiento de prueba a la defensa. Los apelantes querían examinar los expedientes de personal de seis (6) policías pero el Ministerio Fiscal se opuso, alegando que dichos policías no eran testigos de cargo y que sus expedientes de personal eran confidenciales. El foro apelado acogió favorablemente este fundamento y denegó el descubrimiento.
Actuó correctamente.
La Regla 95 de Procedimiento Criminal, supra, permite el descubrimiento de prueba del Ministerio Fiscal en favor del acusado. En términos generales, se autorizará el descubrimiento, declaraciones juradas del acusado o de testigos de cargo; resultados o informes de exámenes físicos o mentales y experimentos o pruebas científicas; cualquier pertenencia del acusado o que se proponga usar el Ministerio Fiscal en el juicio, que sea relevante para preparar adecuadamente la defensa del acusado; y el récord de convicciones criminales de éste o cualquier informe preparado por policías que esté relacionado con las causas seguidas contra el acusado.
Los expedientes de personal de unos policías, que ni siquiera eran testigos de cargo, no constituían el tipo de documento que se permite descubrir. Además no se demostró la pertinencia del mismo. Concluimos, que no erró el tribunal apelado al denegar el descubrimiento de prueba.
y
El último error discutido se refiere a que incidió el jurado al emitir veredictos inconsistentes. En cuanto a este señalamiento resolvemos que este error tampoco se cometió.
El Tribunal Supremo de Puerto Rico ha sostenido en innumerables ocasiones, que generalmente no constituye error que de lugar a la revocación de una convicción, el mero hecho de que el jurado emita veredictos que no guardan la más absoluta consistencia lógica entre sí, con respecto a diferentes pliegos acusatorios. Pueblo v. Cabán Torres, 117 D.P.R. 645, 657 (1986). (Casos citados.)
En el caso ante nos los veredictos emitidos fueron conforme la prueba evaluada por el jurado y aun cuando se alegue que son inconsistentes, son válidos y no vamos a variarlos.
VI
Es norma reiterada de derecho, que un tribunal apelativo no intervendrá con el criterio del juzgador de hechos a menos que se pruebe que medió pasión, prejuicio, parcialidad o error manifiesto en la determinación. Pueblo v. Torres García, opinión del 19 de septiembre de 1994, 94 J.T.S. 123, pág. 210.
Ninguna de estas circunstancias se han probado en el presente caso.
Por último, hacemos nuestra la conclusión a la cual llegó el Tribunal Supremo:
"[l]a evidencia probó todos los elementos de los delitos imputados. Nada se desprende de dicho examen que nos mueva a descartar dicha evidencia; la misma es susceptible de ser creída por cualquier persona razonable y goza de suficientes garantías de veracidad. Dirimidos por el jurado los conflictos que presentó la referida evidencia, no existe base alguna en este caso para dejar sin efecto los fallos condenatorios emitidos por dicho cuerpo." Pueblo v. Colón Burgos y Castillo Rodríguez, supra, pág. 973.
VII
Por los anteriores fundamentos se confirman las sentencias apeladas.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General